George C. Paine, II
US Bankruptcy Judge
Dated: 05/17/11



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:

**EASTER SEALS TENNESSEE, INC.**
    Debtor,

Case Number: 09-05597
Chapter 11
Hon. George C. Paine, II

## MEMORANDUM

This matter is before the court on Easter Seals Tennessee, Inc.'s ("debtor') Motion for Sanctions against Ford Motor Credit Company LLC ("FMCC") for allegedly violating the discharge injunction pursuant to 11 U.S.C. § 524(i). FMCC denied any violation, and the matter was set for hearing on May 12, 2011. At the hearing, the court granted FMCC's request to dismiss the Motion for Sanctions based on the debtor's failure to carry its burden of proof. The court granted the motion, and informed the parties that findings of fact and conclusions of law would be given in a written decision. The following constitutes the court's findings of fact and conclusions of law. **Federal Rule of Bankruptcy Procedure 7052.**

The debtor, a not for profit corporation, filed a voluntary petition under Chapter 11, on May 17, 2009. The court confirmed debtor's plan of reorganization on August 12, 2010. FMCC was treated as a secured and unsecured creditor in the debtor's confirmed plan. The plan provided as follows for the secured claims:

> **b.** <u>**Class 2 – Secured Claims of FMCC.**</u> The Class 2 Claims shall be satisfied by the grant of secured claims in the amount of $8,000.00, including adequate protection payments made through the Effective Date, for each of the 17 Ford Taurus cars owned by Debtor that it wishes to retain post Effective Date, and by the grant of a secured claim in the amount of $9,750.00, including adequate protection payments made through the Effective Date, for the Ford Freestar van owned by Debtor. The claims secured by the 17 Ford Taurus cars will accrue interest at the rate of four and one quarter percent (4.25%) per annum and will be paid in 30 equal monthly installments commencing in October 2010. The claims secured by the Ford Freestar van will accrue interest at the rate of three and and one half percent (3.5%) per annum and will be paid in 36 equal monthly installments commencing in October 2010. Any of the secured claims may be prepaid in whole or in part at any time without penalty and, after the Effective Date, any vehicle may be returned to FMCC in full satisfaction of the debt owned on that car; provided however, that FMCC shall be entitled to receive any insurance proceeds received as a result of any accident involving any vehicle abandoned to FMCC. As security for payment of these secured claims, the Class 2 Claimant shall retain all perfected liens and security interests held as of the Petition Date, without the need for the execution of any new financing statements or security agreements, provided however, that each of these liens shall secure only the vehicle or vehicles to which it expressly relates. For the three remaining cars in which FMCC has a security interest, Debtor will abandon those automobiles to FMCC.

**Debtor's Confirmed Chapter 11 Plan of Reorganization**, August 12, 2010, page 9. FMCC also had an unsecured deficiency claim that was to be treated pro rata with other unsecured claimants under the confirmed plan.

One of the vehicles, a 2007 Ford Taurus, was wrecked in December 2010. Easter Seals employee, Susan Brown, testified that she called FMCC on January 28, 2011 to get the payoff amount to settle the claim with the insurance company. Mrs. Brown testified that an FMCC employee told her that the payoff amount on the account was $10,665.90. When Ms. Brown explained that this could not be correct because of the confirmed bankruptcy plan, the FMCC employee told Mrs. Brown she would have to speak with someone in the bankruptcy department. Mrs. Brown explained that she was cutoff when being transferred. Mrs. Brown called FMCC back and a different FMCC employee quoted her the same $10,665.90 payoff amount,

and she testified that she was transferred to "Mike" in the bankruptcy department who told her it had been turned over to the attorneys.

FMCC employee Michael Stretlien testified that FMCC records indicate the following conversations took place between Mrs. Brown and FMCC employees:

1.28.11: FMCC employee LaTeasha Calvert received a phone call from Susan Brown wherein Susan Brown advised that one of the Chapter 11 accounts was a total loss and wanted a payoff on the account. LaTeasha Calvert quoted a payoff of $10,665.90 on the account.

1.31.11: Darlene Turner received a phone call from Susan Brown wherein Mrs. Brown disputed the payoff. While Darlene Turner reviewed the account Mrs. Brown hung up the phone. Susan Dianda received a phone call from Susan Brown requesting to speak with Mike and indicated she wanted a payoff and that she would call back.

Easter Seals settled the insurance claim with its carrier for $9,875. After deduction of the $1,000 deductible, the insurance proceeds are $8,875. The parties agreed that the debtor is entitled to excess insurance proceeds of $1,893.26, over FMCC's pay-off amount of $6,981.74.

In discovery, the debtor requested and received accounting records showing the account histories for the relevant vehicles. According to Mr. Stretlien's testimony, the payoff quote given by the customer service representatives was the contractual balance, and that balance does not reflect the balance under the confirmed plan because that is a manual calculation. Stretlien explained that FMCC employees document the accounts to a bankruptcy filing, and the terms of a confirmed plan. For this reason, the customer service representatives sent Mrs. Brown to their bankruptcy department for a payoff amount.

The debtor asserts that FMCC's incorrect payoff amount and internal recording

keeping indicate that FMCC was attempting to collect discharged debt, and improperly accounting for post-confirmation payments on the debtor's accounts. These actions, according to the debtor violate 11 U.S.C. § 524(i), which provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i)(2011). FMCC argues that the debtor failed to show that FMCC acted to collect a discharged debt, and furthermore that the debtor cannot show that FMCC failed to credit payments in accordance with the plan. At the close of the debtor's proof, FMCC asked the court dismiss the debtor's sanctions motion. The court granted FMCC's request.

### A. "Failure to Credit Payments in the Manner Required by the Plan"

Based on the debtor's proof, the court cannot find that FMCC's accounting practices failed to properly credit payments. Mr. Stretlien testified that FMCC maintained two systems, one accounting for the contractual balances, and a separate system in the bankruptcy department. A failure to show a reduction in accordance with the confirmed plan on FMCC's contract balance sheet does not necessarily indicate that FMCC was improperly crediting plan payments elsewhere. Keeping a contract balance does not show that FMCC was failing to properly credit payments in a manner consistent with the confirmed chapter 11 plan.

### B. Act of FMCC "to Collect"

Even if FMCC's accounting practices arguably failed to account for the proper

crediting of plan payments, at no time did FMCC take any act to actually "collect" the debt. The debtor's allegations rely more on the assumption that at the end of the plan payments, FMCC WOULD have attempted to collect these debts based on the contractual balances. Mrs. Brown made two or three calls to FMCC to request a payoff amount. Admittedly, she was given an incorrect amount. However, as soon as she brought it to the attention of FMCC's customer service representatives, Mrs. Brown was told she would have to talk to the bankruptcy department or the legal department. FMCC did not demand payment of the misquoted amount; did not demand payment of any kind; and did not contact the debtor.

The plain language of 524(i) makes it clear that it simply does not matter what type of internal accounting practices a creditor maintains if the creditor does not take any action to collect a discharged debt. **In re Cox**, 2008 WL 4900552(Bankr. N.D. Miss. Sept. 19, 2008) (holding "a creditor's mere act of posting charges to a debtor's account for record keeping purposes, standing alone, does not violate ANY provision of the Bankruptcy Code, though the act of collecting or attempting to collect these charges from the debtor may be impermissible depending on the relevant circumstances."). The court finds FMCC took no action to collect discharged debt.

The debtor failed to show FMCC violated the discharge injunction in any way. Accordingly, the court DENIES the debtor's motion, and grants FMCC's request to dismiss the debtor's motion for sanctions. The court instructs counsel for FMCC to prepare an Order not inconsistent with this court's Memorandum within fourteen (14) days of entry of this decision.

5-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:09-bk-05597    Doc 299    Filed 05/18/11    Entered 05/18/11 07:01:30    Desc Main
Document    Page 5 of 5

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.